## YERBY, County Sup't, *vs.* SEXTON et al.

[ACTION BY COUNTY SUPERINTENDENT OF EDUCATION TO COLLECT PROMISSORY
NOTE, PAYABLE TO TRUSTEES OF SIXTEENTH SECTION SCHOOL FUND, AND SUC-
CESSORS, &C., GIVEN FOR MONEY LOANED, &C.]

1. *Township trustees, note payable to ; how collectable before adoption and inau-
guration of present educational system.*—Promissory notes payable to town-
ship trustees, or their successors in office, under the free public school
system, for *money loaned by them, that had accrued from the sale of the six-
teenth section of their respective townships,* might, before the inauguration
of the present educational system, have been collected by said trustees,
in their name as trustees, &c., for the use of schools and school purposes
in said townships.

2. *Same; who may sue to collect under present educational system and laws.*—
Under the present educational system, such notes are required to be
turned over to the county superintendent of education of the proper
county, and, if necessary, may be collected by suit in his name as county
superintendent, &c.

3. *"Party really interested;" meaning of words as used in section 2523 of Re-
vised Code.*—No fixed rule has been laid down, or probably can be, by
which the meaning of the words, "the party really interested," as used
in section 2523 of the Revised Code, can be certainly determined, as ap-
plicable to particular cases or to cases generally. Whether a party has,
or has not, the legal title, if he is the party to whom payment can legally
be made, and who can legally discharge the debtor, the action may be
brought in his name, although the money, when collected, is not for his
use, but is for the use of some other person or persons, to whose use he
is required to apply it, or to whom he is bound to pay it.

APPEAL from the Circuit Court of Hale.
Tried before Hon. L. R. SMITH.

The complaint in this case was as follows:

"M. H. Yerby, county sup't of Hale county, v. L. L. Sex-
ton, J. K. Elliott, Pinkney Jones.

"The plaintiff, as county superintendent of Hale county,
Alabama, claims of the defendants three hundred dollars,
with interest, due by promissory note made by them on
the 25th day of October, 1859, and payable twelve months

after date, to the trustees of the sixteenth section school fund in township 22, range 4, east, in said county; said note has been transferred to plaintiff by said trustees, in accordance with an act of the legislature approved August 11th, 1868. Said note was given for the loan of moneys arising from the sale of the lands of the sixteenth section in said township 22, and this suit brought at the instance of the trustees of said township."

The defendants craved oyer of said note, which was read to them, as follows:

"$300.' Twelve months after date, we or either of us, promise to pay to the trustees of the school fund in township 22, range 4, east, or their successors in office, the sum of three hundred dollars, with interest annually from date. October 25th, 1859.    (Signed)

"L. L. SEXTON,
"Jo. K. ELLIOTT,
"P. JONES."

Said note is thus endorsed on the back thereof:

"Transferred the within note to M. H. Yerby, county superintendent for Hale county, in accordance with the act of the legislature of Alabama, approved August 11, 1868. This 4th day of August, 1869.

"(Signed)        B. HOLBROOK, for
"B. HOLBROOK,
"J. G. WILLIAMS,
"S. HENRY,
"Trustees."

The defendants then demurred to the complaint, on the following grounds:

"1. Because, by the said complaint the said plaintiff alleges and shows that the said note was, and still is, the property of a corporation, known and described as township 22 of range 4, east, created by the laws of Alabama, capable of suing and being sued in its corporate capacity.

"2d. Because, the plaintiff by his said complaint shows that the note upon which this suit is founded was, and is, the property of the school corporation known as township

22, range 4, east; and that said corporation, and not the plaintiff, is the party really interested in said note; wherefore, they pray judgment of the court.

"3d. Because, the said complaint shows that said trustees have no authority, by the act recited, to transfer, by indorsement or otherwise, the said note to the said plaintiff, as superintendent of Hale county; wherefore, they pray judgment, &c.

"And 4th. Because, the said plaintiff by his complaint fails to show any authority to institute said suit for and in behalf of the corporation to which said note belongs; wherefore, they pray judgment," &c.

The court sustained the demurrer, and the plaintiff declining to plead over, judgment was rendered against him, &c., and hence this appeal.

The counsel of the parties filed among the papers in the cause a written agreement, which, so far as the same is material, is as follows:

"In this cause, it is agreed between the counsel for appellant and appellees that the demurrers of the appellees, as set out in the record, shall put in issue the capacity of the appellant, in his own name, as county superintendent of Hale county, to bring and maintain the action on the note sued on in this case, as the party really interested in said note," &c.

The chief error assigned is, that the court below erred in sustaining the demurrer.

J. J. GARRETT, for appellant.—1. *Tompkins et al. v. Reynolds*, (17 Ala. 109,) *Moore & Jones, Adm'rs, v. Henderson*, (18 Ala. 232,) *Bryan et als. v. Wilson*, (27 Ala. 208,) and *Leonard v. Storrs*, (31 Ala. 488,) conclusively show that a party, other than the owner of a promissory note, may maintain an action thereon in his own name, under the provisions of the statute; and they settle conclusively that where there is a sole and exclusive right to receive the money due on the note, or a liability to account to the owner of the note for the money due thereon, there is such

an interest in the party entitled to receive or liable to account, as will make him the party really interested within the meaning of section 2523.

2. The note sued on is not the property of the corporation known as "Township 22, Range 4, east."

If there be such a corporation, (and it is questionable whether, under the present school system, there are any such corporations as townships,) it exists by virtue of section 576 of the Revised Code. The capacity of townships, as corporations created by that section, to hold property, is expressly restricted by section 959 of the Revised Code to two acres of real estate and one thousand dollars worth of personal property. The corporation known as "Township 22, Range 4, east," never could have been the owner of the six hundred and forty acres of the sixteenth section in township 22, range 4, east; and if it could not be the owner of the sixteenth section, it was not, and is not, the owner of the money realized from its sale. Section 575 of the Revised Code, the one immediately preceding that by which the townships are incorporated, declares, that "all school lands are vested in the State, in trust to execute the objects of the grant." The school founds could not be vested in the State and at the same time in the corporations created by the incorporation of the townships. The State, through its legislature, might undoubtedly have endowed those corporations with capacity to hold the property and title in the whole of the lands of the sixteenth section; but it has not done so, and on the contrary has expressly limited that capacity to two acres, and this most probably for the simple purpose of a location for township school houses.

The relation which the State of Alabama sustains to the lands granted to the State for the use of schools, and to the school fund arising from the sale of those lands, is that of trustee to execute the purposes of the grant, with *full legislative power over the subject matter of the trust.* These powers have in fact no limit but the good faith of the State. Unlike other fiduciary agents, the will of this trustee, as expressed through its legislation, is the law of the admin-

istration of the trust. The trustee is literally a "law to itself;" and within the scope of the purposes of the grant and its execution of them, it has no superior on earth.— *Mobile School Comm'rs v. Putnam*, 44 Ala.

The various acts which have been cited show a manifest intention in the legislature to constitute the county superintendent the sole and exclusive custodian of the local school funds in his county, and the act of August 11, 1858, gives him the exclusive right to receive *all* moneys, records, books, or other property, then in the hands of county superintendents, township trustees, or other school officers; and he has never been required to surrender them to any other custodian, but merely to report to the State superintendent the disposition he has made of the moneys so received. The act requiring them to be placed in his custody clearly looks to his responsibility for their proper management and safe keeping, by withholding them from his possession until he had given bond. When he had done so, no one else could legally have or hold possession of the property committed to his keeping by law; nor in the case of promissory notes or other debts, could any one else receive or enforce payment of them by suit. The trustees under the old system could not do this; for on the 11th August, 1868, all offices of county superintendents, township trustees, and school commissioners were declared vacant.—School Acts 1868, p. 15. The trustees under the new system could not do this, because, under the new system, they have nothing whatever to do with the school property. If they were to receive the money due on such notes, they might be compelled to turn it over to the county superintendent, by suit in his name, if necessary. The State superintendent of public instruction could not enforce the payment of such notes by suit or otherwise; because they are by law committed to the custody of another officer; and moreover, the state superintendent is prohibited by law from collecting money loaned out by the township trustees under authority of law. Further still, the interest upon such notes given for the purchase of sixteenth sections, except such as were deposited in the banks for

collection, and by them turned over to the State superintendent under the act of February 6th, 1858, p. 309, was to be paid to the county superintendent, to be disbursed by him according to law. No one else could receive payment of this interest but the county superintendent, and he had a right, therefore, to sue in his own official capacity and name to recover it, if payment were withheld. By parity of reasoning, he would be entitled in the same way to recover the interest on notes given for the proceeds of the sales of the sixteenth section; and as in this case those notes were placed in the hands of the plaintiff by the law, he became solely and exclusively entitled to receive payment of both principal and interest, and responsible on his official bond for using all necessary means to collect the amount due thereon. Being thus constituted a receiver by the statute of August 11th, 1868, with the sole and exclusive right to receive the money due on the note sued on, the plaintiff was the *party really interested*, within the meaning of section 2523 of the Revised Code, no matter whether the note sued on was the property of the State of Alabama, or of township 22, range 4, east, and this action was properly brought in his name.—*Leonard v. Storrs*, 31 Ala. 488.

The board of education had full power to authorize the plaintiff to receive the note sued on from the school officers of the old system, and to manage and dispose of it according to their direction. The board have all the legislative powers exercised by the general assembly in regard to the old system. And it follows, that the plaintiff, who is the officer entitled under the new system to receive the note upon which this suit is brought, derives his right and authority in respect thereto, not from the officers of the obsolete school system who had been holding it, but from the board of education, which required him to receive and account for it. The plaintiff, therefore, need not attempt to show that they had a right to transfer the note to him. He need not attempt to show any authority from them to bring this suit, for they had none to confer.

W. & J. WEBB, *contra.*—1. If it appear from the complaint that the party plaintiff is not the party really interested, a demurrer will lie.—31 Ala. 404.

2. The act of August 11th, 1868, simply makes the county superintendent the *"custodian"* of books, &c., belonging to each *"county."* It only intended to put in the hands of a bonded officer the books, moneys, &c., belonging to the *county*, not those belonging to the 16th section fund. This fund belongs to a body corporate known as "Township 22, Range 4, east," created by section 576 of the Revised Code, and long before that, Clay's Digest, 522, § 12. Such corporation may sue and be sued.—Revised Code, §§ 959, 960. The board of education, by their act, have re-adopted these sections of the Code.—See Acts of 1868, pp. 151–6.

3 The act of congress of March 22d, 1867, gives the proceeds of the sale of these lands "for the support of schools within the several townships," &c., for which they were originally reserved and set apart, *and for no other purpose whatever.* It is provided in this act, that in the apportionment of the proceeds of this fund, each township, &c., shall be entitled to *such part thereof, and no more*, as shall have accrued from the money arising from the sale of lands belonging to *such township*, &c. By this act, the legal title to the fund in question was placed by the government of the United States (the grantor) in the State of Alabama as trustee, for the benefit of the inhabitants of each respective township.—4 Ala. 629–31.

4. Conceding to the board of education the fullest legislative power which can be claimed for it under the constitution, under the influence of the decision of the court in *Putnam v. Mobile School Commissioners, in the administration, after they are collected*, of all funds, from whatever source derived, for public institutions of learning and education in this State; yet, it can not be claimed that said board has any grant of legislative power, either to make or alter the laws of Alabama governing or directing the mode of *judicial proceedings* in Alabama in suits for the collection of money. Such is the purpose and nature of section 2523 of the Revised Code. Nor can it be successfully claimed

or maintained that the board of education has any legislative power to say or enact who are the ("*really*") beneficially interested parties in funds arising from the proceeds of sale of sixteenth section school lands. That is fixed by the act of congress, which *is the supreme* law of the case, any thing to the contrary in the State constitution or State law notwithstanding. Thus, it has never been imagined that the board of education has any constitutional power to levy and assess the taxes which are appropriated by sections 11, 12, and 13 of article 11 of the constitution, but only to direct the administration of the funds *after* they have been collected in accordance with the revenue law enacted by the legislature for school purposes.

But the board of education has not enacted any law or laws subversive of the vested rights of the parties who took the beneficial interest in the fund in litigation under the act of congress of 2d March, 1827. On the contrary, it has re-enacted very nearly all, if not all, of the sections of the Code upon the subject of the proceeds of sale of sixteenth section lands.—See "Laws relating to the Public Schools of Alabama," p. 14, § 9, re-enacting section 604 of the Code requiring said notes to be taken payable to the "State of Alabama for the use of township 22, range 4." Again, on page 16, section 24, re-enacts section 428 of the Revised Code, and act of 1857–8, as to how matured notes for sale of sixteenth section lands shall be collected; and also section 428 of the Revised Code re-enacted, which directs that "all collections on said notes must be paid into the *treasury of the State*." So, also, section 428 of the Revised Code has been re-enacted by the board.—See p. 17; and see act of board of education re-enacting laws in the the Code, in School Acts of 1870, page 11; in "Hodgson's School Laws," p. 20.

And, as a further argument showing that the legislature still retains the power of legislating, and directing the manner of collecting the notes given for sixteenth section school lands, see Acts of 1870–71, p. 46; *ibid*, p. 52. The latter refers to and confirms the correctness of the law contained in sections 428 and 429 of the Revised Code, re-enacted

by board of education, and which said sections were the law at the time of instituting this suit.

These acts of the legislature are persuasive to show two things—1st, that the legislature still holds and continues to exercise legislative power over the subject-matter of these funds, and of educational funds and officers; and, 2d, that it does not regard the constitutional provisions of article 11 as conferring power on the board of education to direct the mode or manner of collecting these funds.

The principle involved in the decision of this case is based on the jurisdiction of the chancery court over the settlement of copartnerships, and the administration of their assets for that purpose.

PECK, C. J.—The question presented by the argument to be decided by this court on the record in this case is, "the capacity of the plaintiff, in his own name, as county superintendent of Hale county, to bring and maintain the action, on the note sued on in this case, as the party really interested in said note."

In doing this, the statements of the complaint are to be taken as admitted. 1st. That the note was given by the defendants, for moneys loaned to them by the trustees of the school fund of the township in said note named, called in section 577 of the Revised Code, trustees of free public schools, in said township.

2d. That the moneys so loaned were derived from the sale of the lands of the sixteenth section in said township.

3d. That the plaintiff is, and was, at the time said note was, as alleged, transferred to him and suit brought, county superintendent of education of Hale county.

And 4th. That the persons by whom the said moneys were loaned, and to whom the note was made payable, were trustees of said township, and that the persons by whom, as alleged, said note was transferred to plaintiff, were the township trustees of the township at the time of said transfer.

1. What are known as the sixteenth sections, by the act of congress of the 2d of March, 1819, entitled "An act to

enable the people of Alabama Territory to form a Constitution and State Government, and for the admission of said State into the Union, on an equal footing with the the original States," and by the acceptance of the propositions contained in said act by the convention, for and on the behalf of the people of this State, signed at Huntsville, on the 2d day of August, in the year 1819, were granted to the inhabitants of the respective townships for "the use of schools." And by a subsequent act of congress of the 2d of March, 1827, entitled "An act to authorize the legislature of the State of Alabama to sell the lands heretofore appropriated for the use of schools in that State," the legislature of this State were authorized to sell and convey, in fee simple, the said lands, and to invest the moneys in some productive fund; the proceeds of which fund should be forever applied, under the direction of the legislature, for the use and support of schools within the several townships; but such sales could only be made with the consent of the inhabitants of the respective townships, to be obtained in such manner as the legislature might direct. And it is provided by said act, that in the apportionment of the proceeds of said fund, each township should be entitled to such part thereof, and no more, as might arise from the moneys derived from the sale of the school lands belonging to such township. Under the authority of this latter act of congress, this State has, from time to time, legislated upon this subject, authorizing the sale of said sixteenth sections, and providing the mode and manner of obtaining the consent of the inhabitants of the townships, and by whom and upon what terms the sales should be made; how the purchase-money should be secured, collected and invested, and in what way, and by what persons or officers, the proceeds should be appropriated to the use of schools in the several townships.

The only restraints or limitations on this legislative power are, that said sales should only be made with the consent of the inhabitants, and that the proceeds of the moneys derived from such sales should not be diverted to

any other purpose, but be faithfully applied to the use of schools in the respective townships.

It does not seem necessary, for the purposes of this opinion, to collate the many acts that have been passed by the legislature on this subject. As the law stood in Clay's Digest, the sense of the inhabitants, and the sales of 16th sections, were obtained and made by school commissioners of the several townships, and the notes of the purchasers were made payable to the president and directors of the State bank, or any branch thereof. The said bank and branches received said notes, and collected the same as other debts, according to the common course of law, and a payment at any other place was not deemed a good and valid payment.

Not only were these notes placed in said banks, but all moneys belonging to said sections that then were, or might be afterwards, received by said commissioners, were to be paid into said banks, and said banks were required to pay to said commissioners annually eight per cent. interest, and no more, upon the school funds deposited with them, which was to be applied by said commissioners to the use of schools in their respective townships.

Under the Code of 1852, *three school trustees* were elected in each township, and the office of school commissioners seems to have been abolished; and these trustees held elections to ascertain the sense of the townships as to the sale of sixteenth sections, and when a sale was voted, sold the same at public auction; and the notes for the purchase-money were made payable to the State of Alabama, and not to said banks, for the use of the particular township. These notes were to be deposited, by the judge of probate of the proper county, in the office of the State comptroller, and if not paid within six months after maturity, were to be placed in the hands of the attorney-general for collection; and the money, when collected, was paid to the treasurer of the State.

The governor, from time to time, issued to the several townships certificates of State stock, showing the amount received for each township, to bear interest from the first

day of October of each year. This stock, after it was registered by the secretary of state, was transmitted to the probate judge of the proper county, copied by him in a book kept for that purpose, and then the original certificates were delivered by said judge to the trustees of the township, and the interest on this stock was paid to said trustees of the townships by the county treasurer, and by them applied to the use of schools in the several townships.

Then followed the acts of the 17th of February, 1854, the 14th of February, 1856, and of the 6th of February, 1858. The first of these acts is entitled "An act to establish and maintain a system of free public schools in Alabama;" the second, an act entitled "An act to render more efficient the system of free public schools in the State of Alabama;" the third is entitled "An act to provide for the transfer of all matters relating to the school funds, from the State bank and branches to the office of superintendent of education."

By the first of these acts, the administration of free public schools thereby established was committed to a superintendent of education for the State. Three commissioners of the public schools in each county, and three trustees of free public schools in each township. By the second of said acts, the three commissioners for each county were superseded by a 'county superintendent of free public schools in each county. By this latter act, the respective powers and duties of these officers are prescribed. Among other duties, the superintendent of education was to have and exercise a general supervision over all the educational interests of the State, and to prepare and preserve, in well bound official books, complete and particular exhibits of the condition of the public school fund of each township in every county of the State, specifically discriminating as to the portion derived from its sixteenth section fund, and from other sources; and to see to the faithful disbursement and application of all moneys set apart and appropriated by said act to the use of free public schools; and the comptroller, by said act, was directed to transfer to him all

books, documents, vouchers, bonds, notes, or other instruments appertaining to the school fund; and the interest upon all notes given for the purchase of sixteenth sections, except such as were deposited in the banks for collection, and the rents of such sixteenth sections as were leased, were to be paid to the county superintendent of the proper county, to be by him paid out according to the provisions of said act.

The several county superintendents were to have a general supervision of all free public schools in their several counties; to make a proper distribution among the trustees of free public schools in each township, in the manner by said act prescribed, of all funds that might be subject to their control for school purposes, and pay over the same promptly whenever called upon by said trustees to do so.

The said trustees in each township had, in like manner, the immediate supervision of the free public schools in their respective townships; the power to employ teachers; and they were required to faithfully disburse, in payment of teachers or for the legitimate purposes of said schools, all moneys which they might receive for such purposes.

By the act last above named, the act of the 6th of February, 1858, the commissioners and trustees of the State bank and branches were required to deliver to the superintendent of education all books, documents, notes, or other evidences of debt, relating to sixteenth section funds, that might be in possession of said bank or branches; and it was made his duty to collect all debts due to said bank or branches payable for the purchase of school lands, and for that purpose, he was invested with all the powers in reference thereto which had belonged to said bank and branches; and to pay over the moneys received from the collection of said notes to the treasurer of the State; but it was provided in said act that it should not interfere with, or empower the said superintendent to collect any moneys loaned out by the trustees of any township in this State, as theretofore authorized by law.

Here, we see that the superintendent of education was invested with all the powers to collect these notes, relating

to sixteenth section funds, that had been possessed by said bank and branches. Said bank and branches made said collections, when necessary, by suits in their own names, and by the powers here given the said superintendent might have collected them by suits in his own name, as superintendent, &c. Now, as by said act of the 14th of February, 1856, all notes for the sale of sixteenth sections, under the Code of 1852, which were deposited with the comptroller, were, by said act, to be by said comptroller transferred to the superintendent of education, and he charged with the collection of the same, although said notes were made payable to the State of Alabama, for the use of the respective townships, we can see no good reason why they might not have been collected by suit in his name as superintendent. But as this question is not involved in this case, we decline to say any thing more definite about it, but leave it open for decision if it ever becomes necessary.

The note, the foundation of this action, is not a note given for the purchase-money on the sale of the sixteenth section of said township, but for money loaned by the trustees of said township, which had been derived from the sale of said sixteenth section; a note not payable to the State bank or any one of its branches, nor to the State of Alabama, but to the trustees of said township, or their successors in office. Although I have been unable to find any express provision authorizing such loans, yet we think the proviso to said act of the 6th of February, 1856, to say the least of it, is a clear negative authority for such loans; and before the adoption of the present constitution, and the school system inaugurated under its provisions, the said note might have been collected by suit in the name of the trustees of said township, or their successors in office. If the law permitted the loan to be made, but did not prescribe to whom the note should be payable, it was properly made payable to the trustees, or their successors in office, and they might have maintained an action upon it in their own name, as trustees, notwithstanding section 2523 of the Revised Code. Although the inhabitants of the township had a substantial interest in the money, they had no such

interest as would authorize a suit in their name under said section. The money could not, lawfully, be paid to, or be received by them, but should have been paid to said trustees, who were charged with the faithful disbursement of it, in the payment of teachers or other legitimate school purposes.

Said trustees had not only the legal title to said note, but were, within the meaning of said section, the parties really interested. What the words, "the party really interested," as used in said section, mean, I readily admit I do not very well understand; no rule, so far as I know, has been laid down by which their meaning, as applicable to particular cases, or to cases generally, can be certainly ascertained.

In ordinary cases, there is little difficulty. Where the dry, legal title is in one, and a clear, equitable title is in another, whether by transfer, delivery, or otherwise, to whom alone the money belongs, and who only is entitled to receive it, and authorized to discharge the debtor,—in such cases, there is no trouble ; the action must be brought in the name of the equitable owner. He is, in the language of said section, the party really interested. But where the party having the legal title, is also the only party entitled to receive the money and discharge the debtor, although, when collected, he holds the money, not for his own use, but for the use of some other person or persons, and to whose use he is to apply it, or to whom he is bound to pay it,—in all such cases, the action must be in the name of the party having the legal title. For example, a person dies intestate ; his creditors and his distributees are the persons really interested in his estate, but the legal title, especially as to the personalty, passes to, and vests in, his personal representatives, and they only at law can maintain an action to collect the debts due to the deceased ; they only are entitled to receive the money, and they only can discharge the debtors. So, in the present case, before the adoption of the present constitution and inauguration of the present educational system, an action upon said note would, properly, have been in the name of the trustees of

said township, or their successors in office, although the money, when collected, would not have been for their use, but for the use of schools in said township; in other words, the inhabitants of said township, to whom the sixteenth section thereof was originally granted for the use of schools, would have been the parties really interested; and the present inhabitants are, now, the parties really interested in the money sought to be recovered by this action, but not in the sense in which said words are employed in said section, and I think it very clear, no action can be maintained upon it in their name.

It is earnestly and ably argued by defendant's counsel, that the complaint shows that said note was, and is, the property of a corporation known and described as "Township 22 of Range 4, east," created by the laws of Alabama, capable of suing and being sued in its corporate capacity. By section 502 of the Code of 1852, the inhabitants of each township in this State were incorporated, by the name of "Township —, in Range —," according to its number by the surveys of the United States. By section 822 of said Code, each township, in its corporate capacity, as created by said section 502, might hold real estate in their respective townships, not exceeding two acres, and personal property to the value of one thousand dollars. These corporations were created, manifestly, not to have the management of the sixteenth sections, or the control or disbursement of the funds to be derived from the leasing or sale of said sections, but for other purposes, to-wit: to hold the title to two acres of land, intended, no doubt, as a site for the school house of the township, and personal property, necessary and appurtenant thereto, not to exceed in value one thousand dollars. No action, therefore, could be prosecuted by said corporation for the recovery of said note, either as having the legal title, or as the party really interested. Said corporation had no authority to receive the money, or to discharge the debtors.

I have shown, as I think, that under the old school system, an action to enforce the payment of this note should have been in the name of the township trustees; but, as

that system has passed away, and a new system has been inaugurated under the present constitution, and its management committed to the "board of education," exercising full legislative powers in reference to the public educational institutions of the State, it is necessary to look to that system and the legislation under it, to see if any, and if any, what provisions have been made for the collection of this and other like notes. Here, we find that by an act of the board of education of the 5th of August, 1868, provision is made for the appointment of superintendents of education in each county in the State, under the new system; and by an act of the 11th of August, of the same year, only six days afterwards, all offices of county superintendents, township trustees, and school commissioners, were thereby declared vacant. These were the offices under the old system. And also, by an act of the same date, it is provided that "all moneys, records, books, or other property, now" (then) "in the hands of county superintendents, township trustees, or other school authorities, are" (were) "to be turned over to the county superintendents, or their successors in office."

The language here used is broad enough to embrace, and does embrace, notes then in the hands of township trustees for moneys loaned by them, and, by a fair and reasonable interpretation, it operated as a legislative transfer of the note, the foundation of this action, to the plaintiff as county superintendent of education of said county; and when actually turned over to him by the trustees, he became the legal holder of the same, for the use of schools in said township, and might sue on and collect said note in his own name as county superintendent of education, in like manner as the township trustees, to whom it was made payable, might have done under the law as it existed before the adoption of the present constitution, and the inauguration of the new educational system under its provisions.

For these reasons we hold, that the court below erred in sustaining the demurrer to the plaintiff's complaint.

Let the judgment be reversed, and the cause be remanded for further proceedings, at the appellee's costs.