## DOE EX DEM HALLETT AND WALKER, EX'RS. v. FOREST, ET ALS.

1. The action of ejectment is barred by an adverse possession of twenty years, unless the plaintiff can bring himself within some of the savings of the proviso, of the act forbidding an entry into lands after twenty years.

2. A possession acquired under color of title, and acquiesced in for twenty years, will bar a recovery in ejectment, although during a portion of the time, the plaintiff in ejectment was prosecuting an application to Congress for the confirmation of an imperfect title, derived from the crown of Spain, to a tract of land, within which the land sued for was situate, and to which his title was finally confirmed—he having been in possession anterior to the alledged intrusion.

Error to the Circuit Court of Mobile.

EJECTMENT, by the plaintiffs in error, executors of Joshua Kennedy, against the defendants in error, for a tract of land in the city of Mobile.

The plaintiffs, to sustain their cause, introduced a translation of the application of Thomas Price, to the Spanish authorities, for a parcel of land in Mobile, with the orders and grants of the Spanish authorities thereon. Also, a deed from Price to Wm. E. Kennedy, and a deed from him to Joshua Kennedy; also, the proceedings before the Register and Receiver at St. Stephens, 5th vol. Am. State Papers, 126-8-9, 130, and in the 3d vol. same work; also, the patent certificate, and the patent from the United States.

The plaintiff further proved, that Wm. E. Kennedy was in possession of a portion of the Price grant in 1824, and at the time of his death. That Joshua Kennedy died in 1838, in possession of parcels of the land in the patent claiming under it, and that Joshua Kennedy devised his lands to his executors, the lessors of the plaintiffs.

The defendant, to prove his case, produced a deed from Robert Carr Love, to Charles Jimelat, dated in February, 1822, for the lot in dispute; a deed from Jimelat to another person, and a deed from him to the defendant. It was also proved that the

land was vacant, and unenclosed, until after the purchase by Jimelat, and that after his purchase he cleared and enclosed it in the spring of 1822, and proved a continued possession to the time of the trial.

The plaintiff moved the Court to charge the jury, that the evidences of title, exhibited by the defendant, are not sufficient to bar the plaintiff's claim. That the entry by Jimelat, under the deed from Love to him, was the entry of a tresspasser, unless Love was in possession, claiming title, and that the statute of limitations afforded no protection to the defendant, claiming under him.

Instead of which, the Court instructed the jury, that if Jimelat took possession under Love's deed, he was in under color of title, and if he, and those claiming under him, had been in possession twenty years before the commencement of this suit, the plaintiffs were barred.

The plaintiffs further moved the Court to charge—1. That the title exhibited by the plaintiff, is superior to that of the defendant.

2. That the statute of limitations did not commence running, till the confirmation of the Price title, by the United States.

3. That the statute of limitations, of twenty years, did not bar the plaintiffs' claim, if they find that Joshua, and William Kennedy, were in possession of any of the lands in the Price claim, asserting title during the twenty years, which the defendants held the lot in dispute. All of which the Court refused, and to which the plaintiff excepted, and which he now assigns for error.

STEWART and CAMPBELL, for the plaintiffs in error, made the following points :

The clause of the statute forbidding an entry into lands, after twenty years, must be construed in connection with the succeeding clause of the same act, which secures the right to bring a " possessory" action for the recovery of the lands, within thirty years after the right or title accrued. So considered, it is evident, that if an entry be made within twenty years, the party has two years longer within which to bring his action.

The title of the plaintiff arises under the " Price claim," which was a concession by Gayoso, in 1798, after his power to make conveyances of land had been suppressed. [2 White's Recap. 245, No. 27 ; Preamble to Morale's Reg. 2 White, 234 ; and a

ratification by St. Maxent, Military Commandant at Mobile, in 1806.] The confirmation of the claim did not take place until 2d March, 1829, and the patent did not issue until 1837. The defendant rests alone upon his possession. At the commencement of this possession, (1822,) Kennedy was a suitor to the government, for a perfect title; his proceedings were then pending. No laches is imputable to the government, or any one claiming under it, and Kennedy is entitled to be protected, during the time the government required to examine the title.

It is said, on the other side, that Kennedy might have brought suit upon the title obtained from Gayoso. This is denied. He might, it is true, have sued upon his possession, acquired under it, but not by force of the title. [13 Peters, 436, 498; 8 Cranch, 229.] The evidence, as well as the rights which Price acquired under the inchoate title, became merged, and their effect declared by the patent. [7 Wheaton, 1, 212; 4 id. 488; 6 Peters, 328; 7 Cranch, 359; Peters C. C. 291; 3 Peters, 337.]

That the suit could not have been maintained by Kennedy, is evident from De la Croix v. Chamberlayne, 12 Wheaton 599, and the cases of Hallett v. Eslava, in this Court.

DARGAN, contra.

ORMOND, J.—The action of ejectment is brought to recover the possession of lands—the superior, ultimate right or title, is not, therefore, necessarily involved. To maintain this action, the plaintiff must be entitled to the possession, and must consequently have a right to enter upon the land; when, therefore, he has, by the lapse of time, lost this right, he cannot maintain the action. The counsel for the plaintiff in error, not controverting this general proposition, maintain, that although the statute forbids an entry after twenty years, yet, that if an entry be made within that time, the act secures the right to bring the action, at any time within thirty years, from the time the title accrued. This argument being founded upon the statute, it becomes necessary to construe it.

The 7th section of the act of 1802, (Clay's Dig. 327, § 83,) is as follows: "No person, who now hath, or hereafter may have, any right, or title of entry, unto any lands, tenements, or hereditaments, shall make an entry therein, but within twenty years

next after such title shall have accrued; and such person shall be barred from any entry afterwards, *Provided,*" &c.

The 9th section of the same act, (§ 85 of the Dig.) reads thus: " Every real, possessory, ancestral, mixed or other action, for any lands, tenements, or hereditaments, shall be brought and instituted within thirty years next after the right or title thereto, or cause of such action accrued, and not after: *Provided,*" &c.

We believe it has been the general understanding, both of the bench and bar, from the existence of the Territorial, and State government, that an adverse possession of twenty years, would bar an ejectment; and if the maxim, that *communis error facit jus,* is ever entitled to exert an influence, it is in the present instance. The law has been thus stated, incidentally by this Court, though we are not aware that the point has ever been expressly raised before.

The supposed difficulty in reconciling the two clauses of the statute, arises from the use of the terms, "possessory" and "mixed," in the 9th section. The common division of real actions is into actions " *droitural,*" and actions "*possessory;*" and these are subdivided, into other classes, not necessary to be noticed. To the first head belongs the writ of *Right*—to the last writ of assize, writs of entry, and writs ancestral possessory. [3 Black, Com. 175 to 197, and 1 Roscoe on Real Actions, 3.] All these last mentioned writs, were to recover the possession, and were in fact, as they were called, *real possessory* actions.

The action of *ejectioae firmae,* was not originally a real action, but was the appropriate writ, when the lessee of a term was ejected by a stranger, to recover, not the term, but damages. [3 Black, Com. 199; 2 Roscoe on R. Ac. 481.] But which, in process of time, became the common method of trying the title, where the right of entry was lost.

The action of *waste* is a mixed *real* action, as the land was recovered, and damages for the injury. [3 B. Com. chap. 14.] From this brief statement of the ancient common law actions for the recovery of real property, it appears, that, properly so called, all actions to recover the possession of land, are *real actions;* and that the modern action of ejectment, was not, at common law, a real action. That the Legislature, in the classification of the actions which should not be barred until after thirty years, had reference to the ancient common law classification, is evident from

HARVARD LAW SCHOOL LIBRARY

the use of the terms, "ancestral" and "waste." The former is without meaning, but by reference to the old common law writs, where a different writ was necessary, when the demandant claims in virtue of his own seizin, or possession, from that which was proper, when| he claimed through the *seizin*, or possession of his ancestor. All these distinctions, have disappeared under the adaptation of the modern writ in ejectment, to the trial of titles, as it is wholly unimportant in ejectment, whether the title is derived from the ancestor, or not.

The 7th section is not, in terms, a statute of limitations, and only becomes so, in ejectment, from an inability to make an entry after the lapse of twenty years from the time the title has accrued; whilst the object of the 9th section was to provide a statute of limitation for *real actions*, adopting a portion of the statute of the 32 Henry 8, c. 2, as in the 7th section, a portion of the act of 21 James 1, c. 16, had been copied.

By the statute 4 Anne, c. 16, after an actual entry was made, the action of ejectment must be brought within one year after, and it has been argued that the design of our statute, taken altogether, was, that after an actual entry, the party had ten years further in which to bring his action. This construction is, we think, untenable. The limitation of thirty years is, "after the right and title hath accrued," and if it were conceded that a common law possessory writ, suited to the case, could be sued out within thirty years after the title accrued, provided an actual entry had been made within twenty, still it is clear an action of ejectment could not be maintained, unless the suit was commenced within twenty years; because, after that period, no entry could be made, and therefore none could be presumed.

Our conclusion upon the whole matter is, that the action of ejectment is barred by an adverse possession of twenty years, unless it can be brought within some of the savings of the proviso.

It is further urged, that this statute did not commence running against the plaintiffs, until after the confirmation of their claim by the United States, and the issual of the patent authorized by the act of confirmation. The title of the plaintiffs is derived from a Spanish concession by Governor Gayoso, to Thomas Price, in November, 1798, and a ratification of this act by St. Maxent, the Military Commandant at Mobile, in 1806. This claim was transferred by Price to William E. Kennedy, by whom it was laid

before the board of commissioners, who, at first, reported unfavorably upon it. Finally, a favorable report was obtained, and by the act of Congress, of 2d March, 1829, 1 Land Laws, 455, the claim was confirmed, and in 1837, a patent issued for the lands so confirmed.

The land lies within the lines of the patent. The defendant derives his title by a possession of twenty years, under a deed from one, asserting a title to the land in dispute. This question appears to us to be settled by the decision of the last term, in the case of Eslava v. The Heirs of Narmer, 7 Ala. Rep. 543. It was there held, that it was not intended by the act of confirmation, to legislate upon the title, further than to disavow any title in the United States—the act is, by its terms, a mere relinquishment of any title in the United States.

This argument is fully answered by the case of Eslava, at the last Term. [7 Ala. 543.] It is supposed, that as time will not run against the government, it will not run against the confirmee of the government. But the government never intended by the act of confirmation, to do more, than to relinquish any title which might be in the United States ; and whether the confirmation be considered a new grant, or the admission merely, that a good title existed, derived from the Crown of Spain, in either aspect, it was not intended that the act should have any retrospective effect, except as it regarded the government. This is shown by the language in which the confirmation is couched.

The inception of the title, called the "Price claim," was an order from Gov. Gayoso, in 1798, directing the petitioner, Thomas Price, to be put in possession of the land, he solicited. On the 20th November, 1806, Price again petitioned St. Maxent, the Commandant, to be confirmed in the possession of the land he had obtained from Governor Gayoso, and for a further grant of five hundred arpents, in consideration of arrears due him for his salary, and also because of certain grants which had been made and surveyed to other persons, within the limits of his first grant. It also appears from the bill of exceptions, that William E. Kennedy, who succeeded to the title of Price, was in possession of a portion of the land covered by the "Price grant," as far back as 1824.

Whether the imperfect title derived from Gayoso, anterior to

the treaty of St. Ildefonso, was of itself sufficient, before confirmation by the United States, to support an action of ejectment, we need not inquire, because it is evident that the whole merit of the "Price claim," consists, in the supposition that the concession of Gayoso, in 1798, and its ratification in 1806, by St. Maxent, were genuine; and that possession accompanied it, with assertion of title by the grantee. This, Price expressly asserts in his petition to St. Maxent, stating that he had built a house upon the land so conceded, and had resided there for several years; and St. Maxent, responding to the petition, says, that the facts are within his knowledge.

The commissioners, in their reports on this claim, No. 103, of William Crawford, and No. 3, of the Register and Receiver, all state, especially the latter, that possession accompanied the grant, and that it was inhabited and cultivated from 1798, the date of the grant, "according to the Spanish regulations." This is also explicitly asserted by Joshua Kennedy, in his petition to the Register and Receiver of the land office at Augusta, dated 26th December, 1826, who says, "that inhabitation and cultivation were made, according to the Spanish usages and customs."

Now, assuming all this to be true, it is most apparent, that Kennedy had such a title to the land, as would have enabled him to have maintained a suit against a mere trespasser, and such it is insisted we must consider the inception of the defendant's title. The claim was confirmed, because it appeared to be genuine, and had been possessed and cultivated, according to the Spanish usages and customs, although something had been omitted to make the title perfect; but certainly the government did not intend, by this concession, to cover the confirmee with its mantle, and invest him with one of its sovereign attributes—that no laches should be attributed to him, in any succeeding contest about the land, not only during the long interval he was pressing this claim before the government, but also long before the United States had possession of the country. In a contest with an individual citizen, about a portion of the land, the plaintiff cannot stand upon higher ground, than if their claim had been perfect in 1798, in which event, it cannot be doubted, that the possession of the defendants would have ripened into a title; and if the fact were, (which however is not shown upon the record,) that from the neglect to

cause a survey to be made, and, the boundary thus not ascertained, the plaintiffs were unable to eject the defendants, they can derive no benefit from their own laches.

Other points may arise upon the record; we have confined ourselves to those made in the argument. Let the judgment be affirmed.